## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DR. REDDY'S LABORATORIES INC., <br><br> Plaintiff, <br><br> -against- <br><br> AMARIN PHARMA, INC., AMARIN PHARMACEUTICALS IRELAND LIMITED, and AMARIN CORPORATION PLC, <br><br> Defendants. | Civil Action No. 21-10309 (ZNQ)(LHG) <br><br> Filed Under Seal <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Motion Day: December 20 <br><br> (Filed Electronically) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND REQUEST FOR FEES AND COSTS

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

LEGAL STANDARD ..........................................................................................4

ARGUMENT .......................................................................................................6

     I.     DRL's Allegation that Amarin Had Sufficient or Excess Supply
          Is Objectively Reasonable. ......................................................................7

     II.    DRL's Statement that Amarin Reached its Agreement ███████
              ████████ Was Objectively Reasonable. ...................................13

     III.   Amarin's Rule 11 Motion Is Baseless and Sanctionable. ...................15

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*,
   618 F.3d 277 (3d Cir. 2010) ....................................................................4

*Barley v. Fox Chase Cancer Ctr.*,
   54 F. Supp. 3d 396 (E.D. Pa. 2014) .......................................................6

*Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*,
   38 F.3d 1303 (3d Cir. 1994) ...................................................................4

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
   585 F. Supp. 69 (E.D. Pa. 1983) .......................................................6, 10

*Flanagan v. Shively*,
   783 F. Supp. 922 (M.D. Pa. 1992).........................................................1

*Gaiardo v. Ethyl Corp.*,
   835 F.2d 479 (3d Cir. 1987) .........................................................*passim*

*In re AOL Repurchase Offer Litigation,*
   No. 12 Civ. 3497 (DLC),
   2013 U.S. Dist. LEXIS 171776 (S.D.N.Y. Dec. 5, 2013)...................11

*In re Johns-Manville Corp.*,
   No. 82 B 11656,
   2016 Bankr. LEXIS 4595 (Bankr. S.D.N.Y. Mar. 23, 2016)............17

*Mary Ann Pensiero, Inc. v. Lingle*,
   847 F.2d 90 (3d Cir. 1988) .....................................................................4

*Microcapital Fund LP v. Conn's Inc.*,
   No. 4:18-cv-1020,
   2019 U.S. Dist. LEXIS 127748 (S.D. Tex. July 24, 2019) ................10

*Moeck v. Pleasant Valley Sch. Dist.*,
   844 F.3d 387 (3d Cir. 2016) ...........................................................4, 14

*Murphy v. EISAI, Inc.*,
   No. 19-17552 (KM) (JBC),
   2021 U.S. Dist. LEXIS 72132 (D.N.J. Apr. 9, 2021)........................................4, 5

*Patelco Credit Union v. Sahni*
   262 F.3d 897 (9th Cir. 2001) ...............................................................................1

*Safe-Strap Co., Inc. v. Koala Corp.*,
   270 F. Supp. 2d 407 (S.D.N.Y. 2003) ...............................................................16

*Sloatman v. Triad Media Sols., Inc.*,
   No. 17-cv-11383 (KM),
   2018 U.S. Dist. LEXIS 150005 (D.N.J. Sept. 4, 2018).........................................5

*StrikeForce Techs., Inc. v. WhiteSky, Inc.*,
   No. 13-1895 (SRC),
   2013 U.S. Dist. LEXIS 145755 (D.N.J. Oct. 9, 2013) ................................2, 4, 9

*Walker v. S.W.I.F.T. SCRL*,
   517 F. Supp. 2d 801 (E.D. Va. 2007) ................................................................11

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*,
   315 F. Supp. 2d 623 (D.N.J. 2004)..................................................6, 16, 17, 18

**RULES**

Fed. R. Civ. P. 11 ...............................................................................*passim*

## **INTRODUCTION**

Amarin's Rule 11 motion is improper, dishonest, and therefore sanctionable in its own right. Amarin's characterizations of the Complaint's allegations—"anonymous," "un-vetted," "baseless," "unreasonable"—are demonstrably false, and its arguments are Orwellian (for example: the word "or" does not mean "or"). Dr. Reddy's Laboratories Inc. ("DRL") therefore respectfully requests the Court to order Amarin to pay costs and fees for responding to a frivolous motion, in addition to denying Amarin's motion.[1]

Amarin's letters to DRL before and shortly after DRL filed its Complaint were apparently intended to intimidate. And this Rule 11 motion, strategically filed concurrently with Amarin's motion to dismiss, seeks to sway the Court's view of the motion to dismiss by disputing DRL's factual allegations through facts outside of the Complaint and with sworn testimony (*i.e.*, the Declaration of John Thero ("Thero Decl.")). Both of those purposes are impermissible. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987) ("A court may impose sanctions on its own initiative when the Rule is invoked for improper purpose" such as

---

[1] A "party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni* 262 F.3d 897, 913 (9th Cir. 2001); *see also Flanagan v. Shively*, 783 F. Supp. 922, 927, 927 n.4 (M.D. Pa. 1992) (granting defendants' counter-motion for sanctions when "Defendants did not file a separate motion for sanctions but incorporated their request for sanctions in their brief opposing plaintiff's motion for Rule 11 sanctions").

"intimidation"); *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13-1895 (SRC), 2013 U.S. Dist. LEXIS 145755, at *8 (D.N.J. Oct. 9, 2013) (Rule 11 is not for settling "factual . . . dispute[s]").   Amarin would like the Court to accept its interpretation of the facts as dispositive, but the allegations in DRL's Complaint were objectively reasonable.

## BACKGROUND

DRL filed this case on April 27, 2021, about eight weeks after Amarin's first scare-tactic letter.  *See* Defendants' Brief in Support of Mot. for Sanctions ("Mot.") at 2–3.  Two months after DRL filed this case, Amarin sent notice of its intent to file a Rule 11 motion to DRL.  *Id.* at 3.  Amarin's notice and accompanying attachments denied certain allegations, purported to offer exculpatory evidence, and accused DRL of sanctionable misconduct.  (The present motion omits much of what Amarin wrote in the June draft motion.)  DRL responded that Amarin ignored numerous facts explained in the Complaint.  *See* Declaration of William Baton ("Baton Decl.") Ex. 5.  Nonetheless, Amarin filed the pending motion on October 1, 2021.  DRL served discovery requests on Amarin on May 25, but Amarin has not responded.  *See* Declaration of Seth Silber ("Silber Decl.") Ex. 2.

DRL's Complaint alleges that Amarin has monopoly power in the markets for icosapent ethyl active pharmaceutical ingredient ("API") and icosapent ethyl drugs, and that it entered into exclusive or de facto exclusive agreements with the

leading suppliers of icosapent ethyl API.  *See* Compl. ¶¶ 57–75.  Amarin's motion to dismiss does not contest these facts.  Those exclusive agreements foreclosed and continue to foreclose nearly all of the supply of icosapent ethyl API, even if Amarin does not purchase it.  *See id.* ¶¶ 61, 82.  No matter how much icosapent ethyl API Amarin purchased, its exclusive agreements barred suppliers from selling to DRL.  *Id.* ¶ 81.  As a result, Amarin's conduct caused anticompetitive harm by delaying DRL's launch of its icosapent ethyl drug to compete against Amarin's branded version, called Vascepa.  *See id.* ¶¶ 102–07.

DRL further alleges that Amarin's exclusive and de facto exclusive agreements are unnecessary because there is no evidence of supply constraints and evidence in the public record indicates that Amarin had sufficient *or* excess API supply.  *See id.* ¶¶ 76–78.  Amarin boasted to investors regarding its exclusive relationships with API suppliers, making clear that it has long intended to foreclose competition.  For example, in 2015 Amarin explained that certain suppliers would *not* "be free to sell [API] to potential competitors" even "[i]f we do not meet the respective minimum purchase obligations in our supply agreements[.]"  *Id.* ¶ 54.  Denying API "from [its] suppliers to [its] potential competitors" is one of Amarin's stated "means to protect" Vascepa.  *Id.*

## LEGAL STANDARD

Under Rule 11, "[s]anctions are to be applied only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010) (citation and internal quotation marks omitted). "In determining whether a party or attorney has violated the duties of Rule 11, the Court must apply an objective standard of reasonableness under the circumstances." *StrikeForce*, 2013 U.S. Dist. LEXIS 145755, at *8 (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988)). An inquiry before the complaint is filed "is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* at *9 (quoting *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994)) (internal quotation marks omitted). Further, Rule 11 "is not an appropriate vehicle for resolving legal or factual disputes." *Id.* at *11–12 (citing *Mary Ann Pensiero*, 847 F.2d at 95). For example, "when issues are close, the invocation of Rule 11 borders on the abusive." *Gaiardo*, 835 F.2d at 483.

Given the high standard to win a Rule 11 motion, courts in the Third Circuit routinely deny Rule 11 motions. *See e.g.*, *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 (3d Cir. 2016); *Murphy v. EISAI, Inc.*, No. 19-17552 (KM) (JBC),

-4-

2021 U.S. Dist. LEXIS 72132 (D.N.J. Apr. 9, 2021); *Sloatman v. Triad Media Sols., Inc.*, No. 17-cv-11383 (KM), 2018 U.S. Dist. LEXIS 150005, at *8 (D.N.J. Sept. 4, 2018).

Here, DRL is not just entitled to denial of the Rule 11 motion—the Court should impose sanctions against Amarin for wasting everyone's time by filing it in the first place. The Third Circuit has noted that district courts may mete out "retribution" and "may impose sanctions" upon a party that improperly invokes Rule 11:

> The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct. A court may impose sanctions on its own initiative when the Rule is invoked for improper purpose.

*Gaiardo*, 835 F.2d at 485 (citation omitted). The plain language of the Rule contemplates this when it says that courts may award expenses and fees "to the prevailing party." Fed. R. Civ. P. 11(c)(2).[2] Courts in this Circuit do not hesitate to impose sanctions, including awarding the non-movants' costs associated with responding to the motion, against the filers of improper Rule 11 motions. *See*

---

[2] *See also* Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendments ("[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since . . . the court may award to the person who prevails on a motion under Rule 11—*whether the movant or the target of the motion*—reasonable expenses, including attorney's fees[.]") (emphasis added).

*Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 408 (E.D. Pa. 2014); *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 630 (D.N.J. 2004); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 585 F. Supp. 69, 72 (E.D. Pa. 1983).

## ARGUMENT

Amarin disputes DRL's basis for two allegations.  Amarin challenges DRL's allegations that (i) "Amarin's public statements in December 2018 confirmed that it had enough API supply for at least two years, which was worth $1 billion in Vascepa sales," Mot. at 6 (quoting Compl. ¶ 77), and (ii) Amarin "entered into the de facto exclusive agreement with ███████████████████████████ ████████████, *id.* at 8 (quoting Compl. ¶ 6).  Amarin wrongly disputes the basis of these allegations because (i) its alleged December 2018 public statements were reported in an objectively credible publication and bolstered by other facts detailed in the Complaint; and (ii) its SEC filings indicate that its contract ████████████████████████.

Moreover, Amarin knows that its Rule 11 motion is baseless, but persisted in filing it in order to intimidate and harass DRL.  Amarin chose not to bring a Rule 11 motion against the indirect purchaser plaintiffs ("IPPs"), even though "[t]he IPPs' Complaint essentially copies the federal antitrust allegations of the complaint submitted by Dr. Reddy's Laboratories Inc."  Defendants' Brief in Support of Mot.

to Dismiss ("Mot. to Dismiss") at 1.  Additionally, comparing Amarin's draft Rule 11 motion, sent to DRL on June 24, 2021, and the filed motion reveals that Amarin recognized that its motion contained frivolous arguments that it cut from the present motion.

## I. DRL's Allegation that Amarin Had Sufficient or Excess Supply Is Objectively Reasonable.

DRL's allegation that Amarin had sufficient or excess API supply is reasonable and based on reliable public information.  Moreover, Amarin's brief ignores the actual language of DRL's allegation, and therefore fails to refute the allegation.

### A. The Smartkarma Article Is More than Reasonable to Rely Upon.

Amarin challenges the sufficiency of a December 2018 article published by Smartkarma, an independent investor research network, that reported Amarin's public comments at a 2018 medical conference.[3]  Mot. at 6–8.  DRL relies, in part, on that article for its allegation that Amarin had sufficient or excess API supply such that there was no procompetitive purpose to block DRL from acquiring API.  *See* Compl. ¶ 77.  Amarin argues that DRL "could not reasonably rely on" the article and, either way, that DRL "intentionally mischaracterized it" by referring to "Amarin's public statements" instead of the article itself.  Mot. at 7–8.  The

---

[3] SC Capital, SMARTKARMA, *Nippon Suisan (1332)—Stalled EPA Sales to Amarin* (Dec. 3, 2018), https://tinyurl.com/4d56tync.

absurdity of Amarin's argument, which is demonstrably false, reflects why DRL should be awarded costs and fees.

*First*, Smartkarma is an objectively reasonable resource on which to rely when conducting due diligence for filing a complaint. The Wall Street Journal and Fortune Magazine frequently quote Smartkarma articles.[4] Smartkarma has been the subject of a Harvard Business Review case study.[5] Amarin claims that the author of the article, SC Capital, is "anonymous," Mot. at 6, but in fact SC Capital is an investment firm quoted in reputable news articles for its insights. A week before Smartkarma published the SC Capital article that Amarin derides as unreliable to the point of being sanctionable, CNN quoted a November 2018 Smartkarma article by SC Capital.[6] Simple online browsing reveals all of these

---

[4] *See, e.g.,* Elaine Yu and Jing Yang, *Blackstone Drops $3 Billion Property Deal with Chinese Power Couple*, WSJ (Sept. 13, 2021), https://tinyurl.com/feu4se; Stephen Wilmot, *How Green Was My Tesla – and How Cheap?*, WSJ (June 18, 2021), https://tinyurl.com/2tsk3kt7; Stephen Wilmot, *Apple Won't Struggle to Find Co-Driver on Car Project*, WSJ (Feb. 9, 2021), https://tinyurl.com/f443dvft; Emaon Barrett and Yvonne Lau, *Not just Didi: China's Internet watchdog targets more U.S.-listed firms for 'national security' review*, FORTUNE (July 5, 2021), https://tinyurl.com/ayr45k6x.

[5] *See* Harvard Business Review Store, *Smartkarma: Market Opportunity in Investment Research* (Apr. 1, 2019), https://tinyurl.com/8zv3mvtp (last visited Oct. 26, 2021).

[6] *See* Daniel Shane, CNN, *The emperor dethroned: Carlos Ghosn's stunning fall from the top of the auto industry* (Nov. 26, 2018), https://tinyurl.com/3axxrruy (quoting the "analysts at investment firm SC Capital"). For SC Capital's referenced article, see SC Capital, Smartkarma, *Nissan Motor--Risks to the*

facts and, thus, that Amarin failed its duty to investigate its allegations.  This failure to investigate is itself sanctionable.

*Second*, DRL cited the article accurately.  Amarin contends that DRL "intentionally mischaracterized" the article by referring to "Amarin's public statements" instead of "the anonymous author."  Mot. at 7–8.  The article is a report of Amarin's public statements at an American Heart Association conference.  Amarin publicly touted its participation in that conference.[7]  The article is clear: "Amarin says that it has" sufficient API "supply for at least two years," for "Vascepa sales worth $1 billion."  That is also what the Complaint says.  *See* Mot. at 7–8 (quoting Compl. ¶ 77).

Amarin's motion has clearly wasted the Court's and DRL's time and resources.  Even if the article misquoted Amarin's conference presentation, that is a question for discovery, but there was nothing objectively unreasonable about DRL's reliance on it.  *See StrikeForce*, 2013 U.S. Dist. LEXIS 145755, at \*11 (finding that the plaintiff's allegations were objectively reasonable because the defendant's "disagreement regarding the facts and law [] do not establish that StrikeForce filed a pleading it knew, or upon reasonable investigation should have

---

*Alliance if Ghosn Returns to Renault as Chairman* (Nov. 21, 2018), https://tinyurl.com/e6bbsnyx.

[7] Press Release, Amarin Schedules Webcast Discussion of Primary REDUCE-IT™ Trial Results Following Presentation at 2018 Scientific Sessions of American Heart Association, Amarin (Oct. 26, 2018), https://tinyurl.com/tt3wm9cw.

known contained groundless or frivolous claims"); *Fisher Bros.*, 585 F. Supp. at 71

("[R]ule [11] is not a discovery device. It is not to be used to require plaintiff to

offer proof of his case . . . before discovery and before trial.") (alterations in

original).

**B.    DRL Has Multiple Sources to Bolster Its Allegation of Sufficient or Excess Supply.**

Moreover, DRL's allegation that Amarin had sufficient or excess API supply

is not based solely on the Smartkarma article.   The fact that DRL has other

(uncontested) sources to support that allegation defeats Amarin's Rule 11 motion.

*See Microcapital Fund LP v. Conn's Inc.*, No. 4:18-cv-1020, 2019 U.S. Dist.

LEXIS 127748, at *34 n.28 (S.D. Tex. July 24, 2019) (finding plaintiffs did not

violate Rule 11 because, even if one source for the complaint's allegations was not

reliable, the "complaint [was] based on various sources").

DRL's allegation that Amarin had sufficient or excess API supply is based

primarily on the number of major API suppliers with which Amarin entered into

exclusive contracts and their public statements about their respective production

capacities.   For example, Novasep says that it is capable of "[l]arge-scale

productions from 100's to 1000's tons," and BASF calls itself a "world leader in

high-concentrate omega-3 fatty acids for pharmaceuticals."  Compl. ¶ 58.  These

are strong indications that major suppliers have plenty of capacity to satisfy the

industry's need for icosapent ethyl API, not just Amarin's.  Amarin has repeated

over the years that it has exclusive supply agreements. *See* Compl. ¶¶ 54 (2015), 57 (2012), 59 (2013 and 2017). And it has publicly confirmed that there are reasons *other* than supply constraints that its suppliers refuse to sell API to DRL and others. *See id.* ¶ 56 (in 2020 there were "various reasons" that Amarin's suppliers "turned down" requests from generic competitors).

The cases that Amarin relies on are inapplicable. In *In re AOL Repurchase Offer Litigation*, the entire claim was based on a single article, which happened to contradict the complaint. No. 12 Civ. 3497 (DLC), 2013 U.S. Dist. LEXIS 171776, at *2–5, 10 (S.D.N.Y. Dec. 5, 2013). In that case, the Rule 11 motion pointed to contradictory allegations and the plaintiff "largely ignore[d] the core issues" in its opposition. *Id.* at *7–10. Here, there is no accusation of internal inconsistency, DRL's allegation about Amarin's API supply reserves has multiple substantiating sources, and DRL is responding to all of Amarin's slim Rule 11 motion.

*Walker v. S.W.I.F.T. SCRL*, is also inapplicable. 517 F. Supp. 2d 801, 806–07 (E.D. Va. 2007). Under *Walker*, "[r]eliance on anonymous sources is particularly troublesome under Rule 11 because unless the source is later identified, there is no way to verify the reliability of the information." *Id.;* Br. at 7. Moreover, in *Walker*, the anonymous article that itself was riddled with contradictions. 517 F. Supp. 2d at 807. As DRL has shown, the Smartkarma

article is not anonymous and does not contradict itself.   Therefore, Amarin's argument must fail.

### C.   Amarin's Linguistic Games Are a Ruse.

Contrary to Amarin's framing, whether Amarin purchased excess supply is not "the core" or the "central" allegation in this case.   Mot. at 1, 5–9.   Amarin refers repeatedly to the "excess supply allegations," (*id.* at 1, 3, 5, 7, 8), but there is no such thing in the Complaint.   It is not "core" or "central" because it is not there in the first place.   Rather, DRL actually alleges that Amarin had "sufficient or excess" API supply.   Compl. ¶¶ 6, 115, 130, 145, 173, 179.   Ordinarily this would go without saying, but "sufficient" and "excess" do not mean the same thing, and the word "or" indicates DRL's recognition that discovery might reveal that Amarin did not always have an over-abundance of API.   Amarin mentions the "sufficient or" language.   *See* Mot. at 3.   But it contends, without explanation, that those words fail to "qualif[y]" the so-called "excess supply allegations."   *Id*.   In short, Amarin's argument is that "or" does not mean "or."   The plain meaning of "sufficient or excess" is that one of those two adjectives might not apply.

The "core" and "central" allegation in this case is that Amarin has agreed to pay suppliers to *not* sell to DRL.   Compl. ¶¶ 5–6, 59, 69, 81.   That is why Amarin's repeated use of the word "purchase" in its motion is so misleading.   Mot. at 1, 2, 3, 5, 7.   Amarin repeatedly argues that it needs and uses all of the icosapent ethyl API

-12-

that it "purchased."  *Id.*   That may be, but it is not what this litigation is about. This case is about all the excess API capacity that *nobody* can purchase, and the fact that nobody can purchase it because Amarin prevents suppliers from selling it to generic competitors.  The Complaint states that Amarin is a monopolist that has entered into multiple exclusive contracts.   Compl. ¶¶ 57–59.   These exclusive contracts are anticompetitive and therefore unlawful.  The exclusivity means that there appears to be excess capacity going unused.   Even if Amarin in fact "purchased" only the amount of API that it needs, Amarin locked up excess supply for no other purpose than to block the generic competitors knocking at the door. Amarin's brief says that it is buying all of the API that suppliers are capable of producing.  Mot. at 7.  But that conflicts with what it told investors in 2020, when it announced that there are "various reasons" that its suppliers decline to sell to DRL, *not* just "that they don't have excess capacity."   Compl. ¶ 56 (quoting Q1 2020 quarterly earnings call).

## II.   DRL's Statement that Amarin Reached its Agreement ▮▮▮▮▮▮▮ ▮▮▮▮ Was Objectively Reasonable.

Amarin's motion disputes DRL's characterization of the timing of Amarin's agreement ▮▮▮▮▮▮▮.  Mot. at 8; Thero Decl. ¶ 9.  Amarin claims that it entered into this agreement ▮▮▮▮, contrary to DRL's allegation that Amarin and ▮▮▮▮▮ reached the agreement sometime ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮, when the FDA approved DRL's abbreviated new drug application).

Mot. at 8 (quoting Compl. ¶ 6).  DRL's allegation is supported by public records and therefore is objectively reasonable: An Amarin SEC filing from ███████ states for the first time that ███████████████████████████████████.[8] (Amarin's 2018 and 2019 SEC filings do not identify ███████ as a supplier.[9]) As the Complaint explains, ███████ told DRL in 2020 that it had committed all of its icosapent ethyl API to Amarin for the *following* three years.  Compl. ¶¶ 73–74.

Moreover, the difference in timing is inconsequential in a Rule 11 motion. *See* Fed. R. Civ. P. 11, Advisory Committee's Note to 1993 Amendments ("Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards.").  Such a minor detail is incapable of rendering the Complaint "patently unmeritorious," and further reflects Amarin's intent to waste the Court's time.  *See Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 n.8 (3d Cir. 2016) (finding that pleadings were not patently unmeritorious or frivolous where "many of the alleged falsehoods Defendants rel[ied] upon [we]re immaterial").

---

[8] Amarin Corp. plc, Annual Report (Form 10-K/A), at 17 (Apr. 29, 2020), http://tinyurl.com/jad79ndh.

[9] *See, e.g.*, Amarin Corp. plc, Annual Report (Form 10-K) (Feb. 27, 2018), https://tinyurl.com/74xx7vut; Amarin Corp. plc, Annual Report (Form 10-K) (Feb. 27, 2019), https://tinyurl.com/nrvtzvet; Amarin Corp. plc, Annual Report (Form 10-K) (Feb. 25, 2020), https://tinyurl.com/msbzp57k.

Even if Amarin entered into the agreement ███████████████, that does not affect DRL's points that (i) Amarin's de facto exclusive agreement ███ ████████ was contrary to industry practice, *see* Compl. ¶¶ 36, 76, and (ii) Amarin already had sufficient or excess supply from its existing supply agreements with the four leading API suppliers █████████████████████ that ultimately locked DRL from the marketplace, *see id.* ¶¶ 77–78.

## III.   Amarin's Rule 11 Motion Is Baseless and Sanctionable.

### A.   Amarin's Actions Reveal That Its Intent Is to Intimidate and Harass.

Amarin's motion abuses Rule 11 for "intimidation and harassment." *Gaiardo*, 835 F. Supp. 2d at 485.   It knows that its motion is baseless and it threatened DRL with this motion (and tortious interference counterclaims), *see* Baton Decl. Ex. 2, to intimidate DRL into dropping its claims.

Amarin notes that "[t]he IPPs' Complaint essentially copies the federal antitrust allegations of the complaint submitted by Dr. Reddy's Laboratories Inc." Mot. to Dismiss at 1.   Yet Amarin did not move for sanctions against the IPPs. The explanation is simple: Amarin is harassing DRL, its competitor and the party that brought its misconduct to light.

Two months after DRL filed this case, Amarin threatened this motion in June, at which time it sent a draft motion.   *See* Silber Decl. Ex. 1.   That draft motion contains multiple arguments that Amarin omitted from its actual motion.

-15-

For example, the draft motion argues that DRL made false allegations about the size of the icosapent ethyl drug market. *See id.* at 8. According to the draft motion, the Complaint "inexcusabl[y]" neglected to contemplate foreign sales of icosapent ethyl drugs, rendering one of DRL's allegations "meaningless." *Id.* at 9–10. The filed motion dropped this argument. If it were true that DRL's allegations were "inexcusable" and "meaningless," then surely the actual Rule 11 motion would have informed the Court. In actuality, Amarin's bluster reveals its intent to intimidate and harass DRL.

### B.   Amarin's Rule 11 Motion Is a Sanctionable Misuse of the Court's Processes.

Sanctions against movants are appropriate "where a party's motion for Rule 11 sanctions is not well grounded in fact[.]" *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003). As explained above, Amarin's arguments are "not well grounded in fact." *See id.* Instead, Amarin's motion sets forth statements that are "untenable, misplaced, [and] inappropriate for a Rule 11 motion." *See Wartsila*, 315 F. Supp. 2d at 630.

Additionally, Amarin's Rule 11 motion arguments, including the supporting case law, are nearly identical to the arguments in its motion to dismiss brief. *Compare* Mot. at 6–8, *with* Mot. to Dismiss at 16. Amarin's copied and pasted Rule 11 motion warrants taxing Amarin with costs for wasting the Court's time. "Where the motion for sanctions merely repeats the substance of another motion

on the docket, clearly creating unnecessary and pointless litigation, courts have awarded the prevailing party its costs." *In re Johns-Manville Corp.*, No. 82 B 11656, 2016 Bankr. LEXIS 4595, at *38 (Bankr. S.D.N.Y. Mar. 23, 2016) (citing *Wartsila*, 315 F. Supp. 2d at 630).

Amarin's motivations are clear: to inappropriately present evidence to the Court in support of Amarin's motion to dismiss and to intimidate and harass DRL. Mr. Thero's declaration, attached to Amarin's Rule 11 motion, attempts to bring before this Court arguments about Amarin's global needs for API supply.  Thero Decl. ¶¶ 6–7.  This is an improper effort to bolster Amarin's motion to dismiss by dragging in information from outside of the Complaint. *See Wartsila*, 315 F. Supp. 2d at 628 ("Even if a Rule 11 motion is ultimately denied, the moving party may be effectively rewarded if the motion is allowed to lead the Court into a searching evaluation of the merits of a case.").

Like its other monopolistic conduct to prevent DRL from entering the marketplace to invigorate competition, Amarin threatened DRL with a Rule 11 motion should DRL proceed with this lawsuit, declaring that DRL should take Amarin at its word that it needed all of the API supply. *See* Baton Decl. Ex. 2. Now Amarin continues its bullying tactics with this frivolous Rule 11 motion. Amarin's misuse of the Court's time through this Rule 11 motion demonstrates the

kind of "improper purpose" that courts in this Circuit have found sanctionable.  *See Gaiardo*, 835 F.2d at 485; *see also Wartsila*, 315 F. Supp. 2d at 630.

## CONCLUSION

For the foregoing reasons, the Court should deny Amarin's Rule 11 motion and award DRL the costs and fees associated with responding to this motion to deter further abuse of the Court's processes.


Dated:  December 10, 2021          Respectfully Submitted,

WINDELS MARX LANE & MITTENDORF LLC

By: */s/ Frank D. Rodriguez*

Frank D. Rodriguez
James P. Barabas
One Giralda Farms
Madison, NJ 07940
Telephone: (973) 966-3200
Facsimile: (973) 966-3250
frodriguez@windelsmarx.com
jbarabas@windelsmarx.com

Of Counsel:

WILSON SONSINI GOODRICH & ROSATI, P.C.
Professional Corporation

Seth C. Silber (*pro hac vice*)
Alexandra Keck (*pro hac vice*)
Christina Clemens (*pro hac vice*)
1700 K Street NW, 5th Floor

Washington, DC 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899

Chul Pak (*pro hac vice*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Phone: (212) 999-5800
Fax: (212) 999-5899

*Attorneys for Plaintiff Dr. Reddy's*
*Laboratories Inc.*